FILED BY **KS** D.C.

**Oct 7, 2021**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**21-20509-CR-MARTINEZ/BECERRA**

Case No. _____

18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(2)(A)
18 U.S.C. § 1956(a)(2)(B)(i)
18 U.S.C. § 2
18 U.S.C. § 982(a)(1)

UNITED STATES OF AMERICA

**vs.**

**ALVARO PULIDO VARGAS,**
    a/k/a "German Enrique Rubio Salas,"
    a/k/a "Cuchi,"
**JOSE GREGORIO VIELMA-MORA,**
**EMMANUEL ENRIQUE RUBIO GONZALEZ,**
**CARLOS ROLANDO LIZCANO MANRIQUE, and**
**ANA GUILLERMO LUIS,**

              **Defendants.**

_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment, unless otherwise specified:

### RELEVANT STATUTORY BACKGROUND

1.     The Foreign Corrupt Practices Act of 1977, as amended, Title 15, United States Code, Sections 78dd-1, *et seq.* (the "FCPA"), was enacted by Congress for the purpose of, among other things, making it unlawful for certain classes of persons and entities to act corruptly in furtherance of an offer, promise, authorization, or payment of money or anything of value to a foreign government official for the purpose of influencing the foreign official, inducing the foreign

official to take or omit certain acts, and securing an improper advantage in order to assist those classes of persons in obtaining or retaining business for, or directing business to, any person.

## RELEVANT INDIVIDUALS AND ENTITIES

2.      Comité Local de Abastecimiento y Producción ("CLAP") was a Venezuelan state-owned and state-controlled food and medicine distribution program for the people of Venezuela.

3.      Comercializadora de Bienes Y Servicios Del Estado Tachira ("COBISERTA") was a company that was owned and controlled by the Venezuelan State of Tachira and that, among other things, purchased food for the people of Tachira.  COBISERTA was a "department," "agency," and "instrumentality" of a foreign government, and COBISERTA's officers and employees were "foreign officials," as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-3(f)(2)(A).  COBISERTA's officers and employees were also "public officials" as that term is used under Venezuelan law.

4.      Coporación Venezolana de Comercio Exterior ("CORPOVEX") was a state-owned and state-controlled entity in Venezuela that managed all import and export activities of Venezuela.  CORPOVEX was a "department," "agency," and "instrumentality" of a foreign government, and CORPOVEX's officers and employees were "foreign officials," as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-3(f)(2)(A).  CORPOVEX's officers and employees were also "public officials" as that term is used under Venezuelan law.

5.      Ministerio del Poder Popular de Economía y Finanzas ("Ministry of Finance") was the government ministry in Venezuela that oversaw the finances of Venezuela.  The Ministry of Finance was a "department," "agency," and "instrumentality" of a foreign government, and the Ministry of Finance's officers and employees were "foreign officials," as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-3(f)(2)(A).  Ministry of Finance's officers

2

and employees were also "public officials" as that term is used under Venezuelan law.

6.    Fondo de Desarollo Nacional ("FONDEN") was the state-owned and state-controlled government entity in Venezuela that invested government funds in the best interests of the people of Venezuela.  FONDEN was a "department," "agency," and "instrumentality" of a foreign government, and FONDEN's officers and employees were "foreign officials," as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-3(f)(2)(A).  FONDEN's officers and employees were also "public officials" as that term is used under Venezuelan law.

7.    Banco de Desarrollo Económico y Social de Venezuela ("BANDES") was the state-owned and state-controlled government entity in Venezuela that was designed to promote economic development and sustained growth in Venezuela.  BANDES was a "department," "agency," and "instrumentality" of a foreign government, and BANDES's officers and employees were "foreign officials," as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-3(f)(2)(A).  BANDES's officers and employees were also "public officials" as that term is used under Venezuelan law.

8.    COBISERTA and CORPOVEX contracted with companies under the CLAP program to purchase and import food into Venezuela and were also responsible for overseeing the execution of those contracts.  CORPOVEX also contracted with companies to purchase and import medicine into Venezuela and was responsible for overseeing the execution of those contracts.

9.    Defendant **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas, a/k/a "Cuchi,"** was a citizen of Colombia. **PULIDO VARGAS**, together with Co-Conspirator 1 (defined below), controlled several companies that obtained contracts from COBISERTA and CORPOVEX to provide food and medicine to Venezuela, including Group Grand Limited and Asasi Food.

10.     Defendant **JOSE GREGORIO VIELMA-MORA** was a citizen of Venezuela. From in or around 2012 through in or around 2017, **VIELMA-MORA** was the Governor of the Venezuelan State of Tachira.  As Governor, **VIELMA-MORA** oversaw COBISERTA and its contracting process.  **VIELMA-MORA** was a "foreign official" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-3(f)(2)(A), and a "public official" as that term is used under Venezuelan law.

11.     Defendant **EMMANUEL ENRIQUE RUBIO GONZALEZ** was a citizen of Colombia and the son of **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas, a/k/a "Cuchi."**

12.     Defendant **CARLOS ROLANDO LIZCANO MANRIQUE** was a citizen of Colombia.

13.     Defendant **ANA GUILLERMO LUIS ("GUILLERMO")** was a citizen of Venezuela and Spain.

14.     Co-Conspirator 1 was a citizen of Colombia.  Co-Conspirator 1 and **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas, a/k/a "Cuchi,"** controlled several companies that obtained contracts from COBISERTA and CORPOVEX to provide food and medicine to Venezuela, including Group Grand Limited and Asasi Food.

15.     Co-Conspirator 2 was a citizen of Venezuela.  Co-Conspirator 2 was a "person" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-3(a).

16.     Venezuelan Government Official 1 was a citizen of Venezuela.  From in or around October 2014, through in or around September 2020, Venezuelan Government Official 1 was a high-ranking official at FONDEN.  From in or around October 2017, through in or around September 2020, Venezuelan Government Official 1 was a high-ranking official for the

4

Venezuelan Ministry of Finance. From in or around January 2014, through in or around September 2020, Venezuelan Government Official 1 was a high-ranking official of BANDES. Venezuelan Government Official 1 was a "foreign official" as that term is defined in the FCPA, Title 15, United States Code, Sections 78dd-3(f)(2)(A), and a "public official" as that term is used under Venezuelan law.

17.     Venezuelan Government Official 2 was a citizen of Venezuela. Beginning in or around at least July 2016, Venezuelan Government Official 2 was a public official in the Venezuelan Ministry of Finance. From in or around December 2017, through in or around March 2020, Venezuelan Government Official 2 was a high-ranking official in the Venezuelan Ministry of Finance. Beginning in or around February 2017, Venezuelan Government Official 2 was a high-ranking official of BANDES. Beginning in or around June 2018, Venezuelan Government Official 2 was a high-ranking official of CORPOVEX. Venezuelan Government Official 2 was a "foreign official" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-3(f)(2)(A), and a "public official" as that term is used under Venezuelan law.

## COUNT 1
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

1.     Paragraphs 1 through 17 of the General Allegations Section are re-alleged and incorporated by reference as though fully set forth herein.

2.     From in or around July 2015, and continuing through in or around at least 2020, in the Southern District of Florida, and elsewhere, the defendants,

**ALVARO PULIDO VARGAS,**
**a/k/a "German Enrique Rubio Salas," a/k/a "Cuchi,"**
**JOSE GREGORIO VIELMA-MORA,**
**EMMANUEL ENRIQUE RUBIO GONZALEZ,**
**CARLOS ROLANDO LIZCANO MANRIQUE, and**
**ANA GUILLERMO LUIS,**

did knowingly and voluntarily combine, conspire, confederate and agree with each other, and other persons known and unknown to the Grand Jury, to commit an offense against the United States, that is:

a.     to knowingly transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(A);

b.     to knowingly transport, transmit, and transfer, and attempt to transport, transmit, and transfer, a monetary instrument and funds involving the proceeds of specified unlawful activity, from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States, knowing that the funds involved in the transportation, transmission, and transfer represented the proceeds of some unlawful activity and knowing that such transportation, transmission, and transfer and attempt to transport, transmit, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i); and

It is further alleged that the specified unlawful activity is: (a) a felony violation of the FCPA under Title 15, United States Code, Section 78dd-3; and (b) an offense against a foreign nation, specifically Venezuela, involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official, as provided by Title 18, United States Code, Section 1956(c)(7)(B)(iv).

6

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by engaging in a scheme to bribe Venezuelan officials to obtain and retain contracts and other business advantages, including obtaining multi-million dollar food and medicine contracts with entities and instrumentalities owned and controlled by the Venezuelan government for the importation and delivery of food and medicine to the people of Venezuela, and to launder bribes, proceeds, and other funds related to the corrupt scheme into and through accounts in the United States in order to promote the illegal bribery scheme and to conceal the nature and purpose of the proceeds of the illegal bribery scheme.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which **ALVARO PULIDO VARGAS, a/k/a "German Enrique Rubio Salas," a/k/a "Cuchi," JOSE GREGORIO VIELMA-MORA, EMMANUEL ENRIQUE RUBIO GONZALEZ, CARLOS ROLANDO LIZCANO MANRIQUE,** and **ANA GUILLERMO LUIS,** and their co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following conduct in the Southern District of Florida and elsewhere:

4.      Throughout the course of the conspiracy and as set forth in the paragraphs to follow, **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas, a/k/a "Cuchi," EMMANUEL ENRIQUE RUBIO GONZALEZ, CARLOS ROLANDO LIZCANO MANRIQUE, ANA GUILLERMO LUIS,** as well as Co-Conspirator 1 and other co-conspirators used numerous companies, which they controlled, to enter into contracts with the Venezuelan government to manufacture and export boxes of food from Mexico and boxes of medicine from various countries, to import the boxes of food and medicine and distribute them within Venezuela,

7

to receive money pursuant to the contracts awarded by the Venezuelan government, to make bribe payments to the Venezuelan government officials, including those officials in charge of awarding the contracts, and ultimately to distribute the proceeds of the corruptly obtained contracts to promote the illegal bribery scheme and to conceal the nature and purpose of the proceeds of the illegal bribery scheme.

5.     Throughout the course of the conspiracy and as set forth in the paragraphs to follow, **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas, a/k/a "Cuchi", EMMANUEL ENRIQUE RUBIO GONZALEZ, CARLOS ROLANDO LIZCANO MANRIQUE, ANA GUILLERMO LUIS,** as well as Co-Conspirator 1 and other co-conspirators, created a web of dozens of personal and corporate bank accounts in multiple countries which they used to receive and transfer the proceeds of the corruptly obtained contracts while concealing the origin and use of the monies obtained through the corrupt scheme.

6.     In or around 2015, **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas, a/k/a "Cuchi," EMMANUEL ENRIQUE RUBIO GONZALEZ, CARLOS ROLANDO LIZCANO MANRIQUE,** Co-Conspirator 1 and other co-conspirators initiated efforts to obtain contracts related to the production, importation, and distribution of food to the Venezuelan government.

7.     As the Governor of the Venezuelan State of Tachira, **JOSE GREGORIO VIELMA-MORA** oversaw the contracting process related to the importation of food into Venezuela for distribution to the people in the State of Tachira as part of the CLAP program.

8.     In or around early to mid-2016, **JOSE GREGORIO VIELMA-MORA** met with Co-Conspirator 1 and Co-Conspirator 2 and discussed **VIELMA-MORA**'s role in the importation of food to the State of Tachira in Venezuela.

9.      In or around early to mid-2016, **JOSE GREGORIO VIELMA-MORA** met with **CARLOS ROLANDO LIZCANO MANRIQUE**, Co-Conspirator 1, and Co-Conspirator 2 to discuss a proposal for the production, importation, and distribution of boxes of food to the people of Venezuela through the CLAP program.

10.     In or around early to mid-2016, at **JOSE GREGORIO VIELMA-MORA**'s direction, Co-Conspirator 2 created a proposal for the discussed boxes of food.

11.     In or around early to mid-2016, **JOSE GREGORIO VIELMA-MORA, CARLOS ROLANDO LIZCANO MANRIQUE**, Co-Conspirator 1, and Co-Conspirator 2 met in Venezuela and discussed the actual cost for the production of the food boxes.

12.     Co-Conspirator 1 agreed to make corrupt payments to **JOSE GREGORIO VIELMA-MORA** to obtain and retain contracts to import and sell food to the State of Tachira.

13.     In or around early to mid-2016, Co-Conspirator 1 directed **CARLOS ROLANDO LIZCANO MANRIQUE** and Co-Conspirator 2 to work together to produce the boxes of food for importation into Venezuela.

14.     In or around mid to late-2016, **JOSE GREGORIO VIELMA-MORA, CARLOS ROLANDO LIZCANO MANRIQUE**, Co-Conspirator 1 and Co-Conspirator 2 met with Venezuelan Government Officials 1 and 2 in order to obtain the support and approval of Venezuelan Government Official 1 and 2 for awarding the food contracts to companies controlled by **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas, a/k/a "Cuchi"** and Co-Conspirator 1.

15.     On or about October 14, 2016, Group Grand Limited—a company owned and controlled by **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas, a/k/a "Cuchi"** and Co-Conspirator 1—obtained a contract from COBISERTA to import and distribute

approximately 10 million boxes of food under the CLAP program at $34/box for a total contract amount of approximately $340,000,000. Although **JOSE GREGORIO VIELMA-MORA** knew the cost of producing and importing the food boxes was far less than $34/box, he agreed with his co-conspirators to allow COBISERTA to purchase the boxes at an inflated price so that the co-conspirators could use the additional funds to pay bribes to **VIELMA-MORA** and other Venezuelan government officials and to obtain millions of dollars of corrupt proceeds from the scheme.

16.     In furtherance of the conspiracy, **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas, a/k/a "Cuchi," EMMANUEL ENRIQUE RUBIO GONZALEZ,** and others were responsible for purchasing food in Mexico, constructing the boxes that would contain the food, and exporting the boxes of food from Mexico to Venezuela.

17.     In furtherance of the conspiracy, **CARLOS ROLANDO LIZCANO MANRIQUE** and others were responsible for receiving the boxes of food sent to Venezuela from Mexico and distributing the boxes of food within the State of Tachira.

18.     In or around mid to late-2016, **JOSE GREGORIO VIELMA-MORA** met with Co-Conspirators 1 and 2 and discussed how **VIELMA-MORA** would receive the bribe money owed to him for his part in awarding the food contracts to companies controlled by, and for the benefit of, **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas, a/k/a "Cuchi,"** Co-Conspirator 1 and the other co-conspirators.   During the meeting, the co-conspirators determined that Co-Conspirator 2 would serve as an intermediary to receive the bribe money on behalf of **VIELMA-MORA.**   Thereafter, Co-Conspirator 2 would forward, pay, transfer, and direct those bribes to **VIELMA-MORA** as **VIELMA-MORA** directed.   Co-Conspirator 2 would also receive payments for his part in the illegal bribery scheme.

10

19.     **ANA GUILLERMO LUIS**, who worked for **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas, a/k/a "Cuchi"** and Co-Conspirator 1, helped create a web of dozens of companies and associated bank accounts in various countries for **PULIDO VARGAS**, Co-Conspirator 1, and other co-conspirators to receive and move the money received from Venezuela as payment for the corruptly obtained food and medicine contracts. Along these lines, **GUILLERMO** helped Co-Conspirator 2 open bank accounts, which Co-Conspirator 2 used to receive, pay, and transfer funds as a bribe intermediary for **VIELMA-MORA**, and to collect Co-Conspirator 2's share of the corrupt proceeds. Likewise, **GUILLERMO** helped create companies and open associated bank accounts to allow other co-conspirators to receive their portion of the corrupt proceeds from the illegal bribery scheme. **GUILLERMO** also helped create fake and fraudulent contracts and other documents to justify the transfers of funds, bribes, and corrupt proceeds related to the scheme.

20.     From on or about December 12, 2016, through on or about April 10, 2018, **JOSE GREGORIO VIELMA-MORA** and Co-Conspirator 2 received approximately $17,256,935 in bribes and corrupt proceeds in exchange for **VIELMA-MORA**'s assistance and influence in awarding food contracts from COBISERTA and CORPOVEX and providing business advantages for the benefit of companies controlled by **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas, a/k/a "Cuchi", EMMANUEL ENRIQUE RUBIO GONZALEZ, CARLOS ROLANDO LIZCANO MANRIQUE, ANA GUILLERMO LUIS,** Co-Conspirator 1, and others.

21.     From on or about December 12, 2016, through on or about July 17, 2017, **JOSE GREGORIO VIELMA-MORA** and Co-Conspirator 2 caused wire transfers of approximately $6,355,158 in proceeds from the illegal bribery scheme to a bank account in the Southern District

of Florida owned and controlled by Co-Conspirator 2.  Among these wire transfers, on or about February 11, 2017, Co-Conspirator 2, while in the United States, caused a wire transfer of approximately $1,600,000 from a bank account he controlled in Panama to a bank account he controlled in the Southern District of Florida in order to promote the illegal bribery scheme and to facilitate the transfer of bribe payments to **VIELMA-MORA.**

22.     On or about February 14, 2017, Group Grand Limited, a company owned and controlled by **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas, a/k/a "Cuchi"** and Co-Conspirator 1 obtained a second contract to import and distribute within Venezuela approximately 10 million boxes of food through the CLAP program for approximately $369,900,000.

23.     In addition to the food contracts, in or around early 2017, **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas, a/k/a "Cuchi"** and Co-Conspirator 1 sought to obtain contracts to export medicine to, and distribute it within, Venezuela through the CLAP program through the payment of bribes to Venezuelan government officials, including Venezuelan Government Officials 1 and 2.

24.     On or about March 31, 2017, Group Grand Limited, a company owned and controlled by **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas, a/k/a "Cuchi"** and Co-Conspirator 1 obtained a contract from CORPOVEX for approximately $70,889,234 to import and distribute medicine in Venezuela through the CLAP program.

25.     On or about May 22, 2017, Group Grand Limited, a company owned and controlled by **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas, a/k/a "Cuchi"** and Co-Conspirator 1 obtained a second contract from CORPOVEX, this one for approximately $74,990,942, to import and distribute medicine in Venezuela through the CLAP program.

26.     In or around July 2017, members of the conspiracy received wire transfers from FONDEN totaling approximately $33,750,295 to an account in Antigua held in the name of Group Grand Limited, a company owned and controlled by **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas, a/k/a "Cuchi"** and Co-Conspirator 1, as payment on the corruptly obtained food and medicine contracts obtained from the Venezuelan government.

27.     From in or around January 2018, through in or around March 2018, members of the conspiracy received wire transfers from BANDES totaling approximately $105,001,292 to an account in United Arab Emirates held in the name of Asasi Food, a company owned and controlled by **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas, a/k/a "Cuchi"** and Co-Conspirator 1, as payment on the corruptly obtained food and medicine contracts obtained from the Venezuelan government.

28.     From in or around January 2018, through in or around May 2018, members of the conspiracy received wire transfers from BANDES totaling approximately €248,727,831 to an account in United Arab Emirates held in the name of Asasi Food, a company owned and controlled by **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas, a/k/a "Cuchi"** and Co-Conspirator 1, as payment on the corruptly obtained food and medicine contracts obtained from the Venezuelan government.

29.     During the course of the conspiracy, **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas, a/k/a "Cuchi," CARLOS ROLANDO LIZCANO MANRIQUE,** and Co-Conspirator 1, using in part the proceeds received by Group Grand Limited and Asasi Foods pursuant to the corruptly obtained food and medicine contracts and using monies from other companies under their control, wire transferred, and caused to be wire transferred, at least $10,000,000 in proceeds and other monies directly to bank accounts in the United States

owned, controlled by and for the benefit of co-conspirators and others. These wire transfers were made in order to conceal and disguise the nature, location, source, ownership, and control of the proceeds and to promote the bribery scheme. At least $5,500,000 of those funds were wired directly into the Southern District of Florida.

30.     During the course of the conspiracy, **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas, a/k/a "Cuchi,"** and Co-Conspirator 1 wire transferred, and caused to be wire transferred, on their behalf, at least $170,000,000 in proceeds and other monies through correspondent banks in the United States to bank accounts owned, controlled by, and for the benefit of co-conspirators, food suppliers, transportation logistic companies, and others. These wire transfers were made in order to conceal and disguise the nature, location, source, ownership, and control of the proceeds and to promote the bribery scheme.

31.     During the course of the conspiracy, Group Grand Limited and Asasi Foods, companies owned and controlled by **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas, a/k/a "Cuchi"** and Co-Conspirator 1, specifically wire transferred, and caused to be wire transferred, at least $22,000,000 in proceeds and other monies to a freight forwarding and shipping company located in Mexico, through correspondent bank accounts in the United States, to pay for costs associated with fulfilling the COBISERTA and CORPOVEX contracts. These wire transfers were made in order to conceal and disguise the nature, location, source, ownership, and control of the proceeds and to promote the bribery scheme.

32.     During the course of the conspiracy, Group Grand Limited and Asasi Foods, companies owned and controlled by **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas, a/k/a "Cuchi"** and Co-Conspirator 1 specifically wire transferred, and caused to be wire transferred, at least $50,000,000 in proceeds and other monies to a food service company

located in Mexico, through correspondent bank accounts in the United States, to pay for costs associated with fulfilling the COBISERTA and CORPOVEX contracts. These wire transfers were made in order to conceal and disguise the nature, location, source, ownership, and control of the proceeds and to promote the bribery scheme.

33.     During the course of the conspiracy, Venezuela's ability to pay foreign companies was limited due to a shortage of U.S. dollars. Therefore, in furtherance of the scheme, Co-Conspirator 1 and **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas, a/k/a "Cuchi"** engaged in business to refine and sell gold on behalf of Venezuela, so that Venezuela could obtain additional U.S. dollars or euros to make the payments owed to foreign companies, including to Group Grand Limited and Asasi Foods under the corruptly obtained food and medicine contracts.

34.     On or about March 6, 2019, Co-Conspirator 2, while in the United States, authorized the transfer of funds at the direction of and for the benefit of **JOSE GREGORIO VIELMA-MORA** from a bank account in the Southern District of Florida to individuals and entities that **VIELMA-MORA** specified, all in furtherance of and to promote the bribery scheme.

35.     On or about August 5, 2019, Co-Conspirator 2, while in the United States, authorized a credit card transaction using Co-Conspirator 2's credit card in order to pay approximately $4,499 to a travel website for a close relative of **JOSE GREGORIO VIELMA-MORA**, at the direction of and for the benefit of **VIELMA-MORA**, all in furtherance of and to promote the bribery scheme.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 2-5
### Laundering of Monetary Instruments
### (18 U.S.C. § 1956(a)(2)(A))

1.      Paragraphs 1 through 17 of the General Allegations Section and paragraphs 1 through 35 of Count 1 are re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates set forth in each Count below, in the Southern District of Florida and elsewhere, the defendants,

**ALVARO PULIDO VARGAS,**
**a/k/a "German Enrique Rubio Salas," a/k/a "Cuchi,"**
**JOSE GREGORIO VIELMA-MORA,**
**EMMANUEL ENRIQUE RUBIO GONZALEZ,**
**CARLOS ROLANDO LIZCANO MANRIQUE, and**
**ANA GUILLERMO LUIS,**

knowingly transported, transmitted, and transferred, and aided and abetted, and caused the transport, transmission, and transfer of, and attempted to transport, transmit, and transfer, a monetary instrument and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, that is, (a) a felony violation of the FCPA under Title 15, United States Code, Section 78dd-3 and (b) an offense against a foreign nation, specifically Venezuela, involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official, pursuant to Title 18, United States Code, Section 1956(c)(7)(B)(iv).

| Count | Approximate Date | Description of Transaction |
|-------|------------------|---------------------------|
| 2 | December 23, 2016 | Wire transfer in the amount of approximately $1,599,965.00 in U.S. currency from an account in Panama to a bank account ending in 9752, located in the United States, specifically in the Southern District of Florida |
| 3 | February 11, 2017 | Wire transfer in the amount of approximately $1,599,965.00 in U.S. currency from an account in Panama to a bank account ending in 9752, located in the United States, specifically in the Southern District of Florida |
| 4 | July 5, 2017 | Wire transfer in the amount of approximately $2,500,000.00 in U.S. currency from an account in Antigua and Barbuda to a bank account ending in 9752, located in the United States, specifically in the Southern District of Florida |
| 5 | August 23, 2017 | Wire transfer in the amount of approximately $630,000.00 in U.S. currency from an account in Antigua and Barbuda to a bank account ending in 9752, located in the United States, specifically in the Southern District of Florida |

In violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

## FORFEITURE
### (18 U.S.C. § 982(a)(1))

1.      The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which any of the defendants, **ALVARO PULIDO VARGAS, a/k/a "German Enrique Rubio Salas," a/k/a "Cuchi," JOSE GREGORIO VIELMA-MORA, EMMANUEL ENRIQUE RUBIO GONZALEZ, CARLOS ROLANDO LIZCANO MANRIQUE, and ANA GUILLERMO LUIS,** have an interest.

2.      Upon conviction of a violation of Title 18, United States Code, Section 1956, as alleged in this Indictment, the defendants shall forfeit to the United States any property, real or

personal, involved in such offense, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

    3.      The property subject to forfeiture as a result of the alleged offenses includes, but is not limited to, a sum of approximately $1,607,626,307.19 in U.S. currency, which represents the amount of funds involved in the violations of Title 18, United States Code, Section 1956 alleged in this Indictment, and which may be sought as a forfeiture money judgment.

    4.      If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third party;

        c.      has been placed beyond the jurisdiction of the Court;

        d.      has been substantially diminished in value; or

        e.      has been commingled with other property that cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property, under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 982(a)(1), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

FOREPERSON

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

_Joseph S. Beemsterboer_
JOSEPH S. BEEMSTERBOER
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION

Kurt K. Lunkenheimer
Assistant United States Attorney

_Alexander Kramer_
Alexander J. Kramer
Trial Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

ALVARO PULIDO VARGAS et al.,

_____ Defendants/

CASE NO._____

**CERTIFICATE OF TRIAL ATTORNEY\***

**Superseding Case Information:**

Court Division: (Select One)

[✓] Miami   [ ] Key West   [ ] FTL
[ ] WPB     [ ] FTP

New defendant(s)   [ ] Yes   [ ] No
Number of new defendants   _____
Total number of counts   _____

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No) **Yes** _____

   List language and/or dialect **Spanish** _____

4. This case will take __17__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   I   0 to 5 days        [ ]
   II  6 to 10 days       [ ]
   III 11 to 20 days      [✓]
   IV  21 to 60 days      [ ]
   V   61 days and over   [ ]

   (Check only one)
   Petty        [ ]
   Minor        [ ]
   Misdemeanor  [ ]
   Felony       [✓]

6. Has this case previously been filed in this District Court? (Yes or No) **No** _____

   If yes: Judge _____ Case No. _____

   (Attach copy of dispositive order)

   Has a complaint been filed in this matter? (Yes or No) **No** _____

   If yes: Magistrate Case No. _____

   Related miscellaneous numbers: _____

   Defendant(s) in federal custody as of _____

   Defendant(s) in state custody as of _____

   Rule 20 from the District of _____

   Is this a potential death penalty case? (Yes or No) **No** _____

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)? (Yes or No) **No** _____

8. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) **No** _____

9. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)? (Yes or No) **No** _____

_____
KURT K. LUNKENHEIMER
Assistant United States Attorney
Court ID No.      A5501535

\*Penalty Sheet(s) attached

REV 3/19/21

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:** <u>ALVARO PULIDO VARGAS, a/k/a "German Enrique Rubio Salas,"</u>
<u>"Cuchi"</u>

Count #: 1

<u>Conspiracy to Commit Money Laundering</u>

<u>Title 18, United States Code, Section 1956(h)</u>

**\*Max. Penalty:** 20 Years' Imprisonment

Counts # 2-5

<u>Money Laundering</u>

<u>Title 18, United States Code, Section 1956(a)(2)(A)</u>

**\*Max. Penalty:** 20 Years' Imprisonment

Count #:

_____

_____

**\*Max. Penalty:**

Count #:

_____

_____

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:** JOSE GREGORIO VIELMA-MORA

Count #: 1

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:** 20 Years' Imprisonment

Counts # 2-5

Money Laundering

Title 18, United States Code, Section 1956(a)(2)(A)

**\*Max. Penalty:** 20 Years' Imprisonment

Count #:



**\*Max. Penalty:**

Count #:



**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:** EMMANUEL ENRIQUE RUBIO GONZALEZ

Count #: 1

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:** 20 Years' Imprisonment

Counts #: 2-5

Money Laundering

Title 18, United States Code, Section 1956(a)(2)(A)

**\*Max. Penalty:** 20 Years' Imprisonment

Count #:

**\*Max. Penalty:**

Count #:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** CARLOS ROLANDO LIZCANO MANRIQUE

Count #: 1

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:** 20 Years' Imprisonment

Counts # 2-5

Money Laundering

Title 18, United States Code, Section 1956(a)(2)(A)

**\*Max. Penalty:** 20 Years' Imprisonment

Count #:


**\*Max. Penalty:**

Count #:


**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** ANA GUILLERMO LUIS

Count #: 1

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:** 20 Years' Imprisonment

Counts # 2-5

Money Laundering

Title 18, United States Code, Section 1956(a)(2)(A)

**\*Max. Penalty:** 20 Years' Imprisonment

Count #:

**\*Max. Penalty:**

Count #:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**